IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

FOREST OAKS – SECTION II
(a Condominium),

    Plaintiff,

v.                                              Civil Action No. _____

QBE INSURANCE CORPORATION,        JURY DEMANDED

    Defendant.

## COMPLAINT

COMES NOW Forest Oaks – Section II (a Condominium), by and through counsel, and for its claims against QBE Insurance Corporation would respectfully state and show as follows:

### PARTIES AND JURISDICTION

1. Forest Oaks – Section II (a Condominium) (hereafter "FOII") is an entity duly formed under the condominium and business organization laws of the State of Tennessee. FOII is a condominium owners association that is governed by a Board of Directors pursuant to Tennessee law. The condominium units and associated property is located at 905-925 (odd), 908-956 (even), 931-943 (odd), 962-968 (even), 1005-1023 (odd), 1006-1036 (even), 1025A, 1025B, 1027-1029 (odd), 1105-1143 (odd), 1106-1142 (even) East Northfield Boulevard, Murfreesboro, Rutherford County, Tennessee 37130 (the "Insured Premises").

2. QBE Insurance Corporation ("QBE") is a Pennsylvania corporation engaged in the business of insurance in the State of Tennessee.

3. This Complaint originates as the result of a storm that severely damaged the improvements and other property located at the Insured Premises, and QBE's unlawful actions as

1

follows: (1) QBE's partial denial of FOII's claim for insurance proceeds; and (2) QBE's refusal to submit to the appraisal process as set forth in the insurance policy at issue.

## FACTS

4. At all times material hereto, FOII was an insured in an insurance contract whereby QBE agreed to insure the Insured Premises against property damage, being Policy No. CAU306280-1 (the "Policy"). The Policy is incorporated herein by reference as if set forth verbatim. The term of the policy was August 1, 2009 through August 1, 2012.

5. At all times relevant hereto, the Insured Premises consisted of a clubhouse, carports, fifty-four two-story frame condominium buildings containing one hundred seventeen (117) residential units, and surrounding areas.

6. The Policy provided insurance coverage for loss or damage to the Insured Premises. The Policy is an "all risk" policy, which means that it provides insurance coverage for all direct physical loss or damage to covered property unless the loss is specifically excluded in the Policy.

7. The Policy's coverage for the buildings and structures on the Insured Premises was on a "guaranteed replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

8. Pursuant to the Policy, FOII paid a premium to QBE in exchange for insurance coverage. FOII paid the required premiums at all times relevant to this Complaint.

9. On or around October 18, 2011, a severe wind and hail storm struck the Insured Premises, causing substantial wind and hail damage to buildings and structures located on the Insured Premises (the "Loss"). As a result of the Loss, the buildings and structures located on the Insured Premises suffered immediate and direct physical loss, including but not limited to

2

Case 3:13-cv-00158   Document 1   Filed 02/22/13   Page 2 of 9 PageID #: 2

damage to metal roof vents, gutters, downspouts, metal panels, vinyl siding, shutters, ridge caps, roof shingles, etc.

10. The Policy was in effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

11. The Loss was promptly reported to QBE on October 19, 2011.

12. FOII fulfilled all of the duties after the Loss that were imposed upon it by the Policy.

13. QBE, by and through its managing general agent, Community Association Underwriters of America, Inc. ("CAU"), admitted and represented to FOII that the Loss was a compensable claim, and portion of FOII's claim as a result of the Loss has in fact been paid.

14. A dispute arose between FOII and QBE as to the amount of the Loss.

15. On January 26, 2012, FOII demanded appraisal pursuant to the appraisal provision of the policy. Specifically, the Policy provides:

> **N. Appraisal**
>
> 1. If you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. In this event, either party will do the following:
>
>     a. Select its own appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.
>        (1) The appraisers will state separately and independently the amount of the loss or damage.
>        (2) If the two appraisers fail to agree they will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.
>        (3) An agreement by any two will be binding as to the amount of the loss.
>     b. Pay the costs of its own appraiser.
>     c. Pay its share of any other costs of the appraisal as follows:

3

> (1) If the amount agreed upon in N.1.a.(3) above is higher than either party's appraisal in N.1.a.(1), above, the party submitting the lower appraisal will pay all such costs.
> (2) If the amount agreed upon in N.1.a.(3) is lower than either party's appraisal in N.1.a.(1), above, the party submitting the higher appraisal will pay all such costs.
> (3) Otherwise, each party's share of such other costs is determined using the following steps:
>
> **Step 1:**
> Determine, by subtraction, the difference between that party's appraisal in N.1.a.(1) above and the amount agreed upon in N.1.a.(3) above.
>
> **Step 2:**
> Divide the result of Step 1 by the difference between each party's appraisal in N.1.a.(1) above.
>
> **Step 3:**
> Multiply the result of Step 2 by the total of such other costs to determine that party's share.
>
> 2. If we submit to an appraisal, we will still retain our right to deny the claim.

16. QBE has refused to submit the claim to appraisal to determine the amount of the loss. In support of its refusal to submit to appraisal, QBE alleges that the claim involves coverage issues inappropriate for the appraisal process. Despite FOII's requests, QBE has been unable or unwilling to identify the coverage issues which it alleges are in dispute. In reality, this claim involves no coverage issues, but rather simply requires a determination of the amount of the loss. The primary disputed issue is the amount owed by QBE to FOII for wind and hail damage to buildings and structures on the Insured Premises during the term of the Policy. There is no reasonable coverage dispute, and this claim is appropriate for the appraisal process as set forth in the Policy.

17. Despite the prior agreement by QBE that the Loss is compensable under the Policy and the fact that FOII has fulfilled all duties imposed upon it by QBE and is at no fault in this matter, QBE has refused to timely and fully pay FOII's claim for insurance proceeds.

4

18. QBE's refusal to promptly and fully pay FOII the amounts owed as a result of the Loss is without justification. QBE's refusal to submit the claim to appraisal is without justification.

19. QBE's refusal to pay the money and benefits due and owing FOII under the Policy and refusal to submit the claim to appraisal has caused FOII to seek legal counsel and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which FOII is entitled.

## CAUSES OF ACTION

### Count I – Breach of Contract

20. The allegations contained in paragraphs 1-19 of this Complaint are incorporated herein by reference as if set forth verbatim.

21. The Policy issued by QBE to FOII is a binding contract, and is supported by valid consideration.

22. QBE is in total, material breach of the Policy, and QBE is liable to FOII in the maximum amount allowed by the Policy for the Loss, less payments previously made. Specifically, QBE breached its contract with FOII by its failure and refusal to fully and promptly pay the amounts owed to FOII as a result of the Loss as required by the terms of the Policy. QBE also breached its contract with FOII by refusing to submit the claim to appraisal for valuation of the amount of the loss.

23. As a result of QBE's breach of contract, FOII has sustained substantial compensable losses for the amounts claimed under the Policy, as well as money damages for economic losses, and other numerous and assorted incidental and consequential damages.

24. QBE's actions and breaches have further caused FOII great and substantial harm due to the fact that it has been unable to replace much of the damage caused by the Loss as a result of the financial hardship unduly placed upon it as a direct and proximate result of QBE's failure to pay FOII the proper amounts as required by the Policy and QBE's refusal to submit the valuation dispute to appraisal. QBE is liable to FOII for its losses.

**Count II – Common Law Bad Faith**

31. The allegations contained in paragraphs 1-30 of this Counterclaim are incorporated by reference as if set forth verbatim herein.

32. FOII alleges that QBE is liable to it as a result of QBE's bad faith in the handling of FOII's insurance claim and QBE's refusal to submit the claim to appraisal.

33. QBE issued a policy of insurance to FOII, and FOII made a lawful, reasonable claim under that policy.

34. QBE intentionally refused to pay FOII's full claim, and intentionally refused to submit the claim to appraisal.

35. QBE had no reasonably legitimate or arguable reason for its refusal to pay the full claim or its refusal to submit the claim to appraisal.

36. QBE had actual knowledge of the absence of a reasonably legitimate, debatable or arguable reason for the refusal to pay or to submit the claim to appraisal.

37. QBE intentionally failed to determine whether it had a reasonably legitimate or arguable reason for refusing to pay FOII's claim or to submit the claim to appraisal.

38. QBE has a duty to act in good faith when handling the claims of its insureds, including the claim filed by FOII as a result of the Loss. The bad faith refusal to settle an insurance claim and to submit a valuation dispute to appraisal is a breach of that duty and

imposes tort liability.

39. QBE breached its duty to handle FOII's claim in good faith by refusing to pay the full amount of the valid claim and refusing to submit the claim to appraisal. QBE's unlawful actions were not predicated upon circumstances that furnished reasonable justification therefore.

40. The bad faith of QBE is evidenced by the fact that, at all times hereto, QBE knew, or reasonably should have known, that FOII was justifiably relying on the rights and benefits due it under the terms of the Policy and as otherwise promised and represented by QBE, as well as the actions of QBE as set forth in the paragraphs above and below. Nevertheless, acting with conscious disregard for FOII's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on FOII, QBE consciously ignored FOII's valid claim and withheld monies and benefits rightfully due FOII and has refused to submit the claim to appraisal.

41. QBE's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

   a. QBE's intentional failure to fully inform FOII of its rights and obligations under the Policy;

   b. QBE's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of FOII's claim when liability was reasonably clear;

   c. QBE's intentional refusal to pay FOII's claim and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

   d. QBE's intentional refusal to fully investigate FOII's claim and to obtain all available information before alleging that it has no further obligations to FOII;

7

e. QBE's engaging in acts and practices toward FOII that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to FOII;

f. QBE's intentional failure to promptly provide FOII with a reasonable and accurate explanation for the denial of FOII's appraisal demand;

g. QBE's intentional failure to properly adjust FOII's claim, to pay FOII fully for its losses, and to submit a dispute concerning valuation to appraisal after proper written demand;

h. QBE's intentional failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

i. QBE's intentional refusal to submit the claim to appraisal after FOII demanded appraisal pursuant to the appraisal provision of the policy on December 7, 2011 when there is only a dispute as to value and no coverage questions are implicated; and

j. QBE's intentional use of biased "experts" to avoid its contractual obligations to FOII.

42. QBE's conduct was intentional, fraudulent, malicious, or reckless, therefore justifying an award of punitive damages.

WHEREFORE, as a result of the foregoing, FOII would respectfully request that this Honorable Court award a judgment against QBE as follows:

A. For an Order requiring that QBE honor the Policy and submit the disagreement concerning the amount of the loss to appraisal as properly demanded by FOII;

B. For compensatory damages not to exceed $1,000,000.00;

C. For punitive damages not to exceed $5,000,000.00;

D. For all costs incurred by FOII as a result of this action;

E. For pre- and post-judgment interest; and

F. For such other further and general relief as this Court deems just and equitable.

## IV. JURY DEMAND

FOII demands a jury.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

*/s/ J. Brandon McWherter*
J. BRANDON MCWHERTER #21600
*Attorney for Plaintiff*
101 N. Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340
bmcwherter@gilbertfirm.com